## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| ROGER KOHN | : | DOCKET NO. 14-cv-0005 |
| D.O.C. # 5706797 | | |
| | | |
| VERSUS | : | JUDGE MINALDI |
| | | |
| N. BURL CAIN, WARDEN | : | MAGISTRATE JUDGE KAY |

## REPORT AND RECOMMENDATION

Before the court is a pro se application for a writ of habeas corpus pursuant to 28 U.S.C § 2254, filed by Roger Kohn ("petitioner") [doc 1]. The petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections. He is currently incarcerated at the Louisiana State Penitentiary at Angola. N. Burl Cain ("respondent"), warden, has responded [doc. 16].

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

### I.
### BACKGROUND

### A. *Conviction*

The petitioner was indicted by grand jury sitting in the 30th Judicial District Court, Parish of Vernon, State of Louisiana, on November 21, 2005.  Through that indictment petitioner was

charged with two counts of aggravated rape.[1] Doc. 16, att. 11, pp. 10, 55. These charges related to two minors: T.P., age 8, and M.M., age 9.[2] *Id.* at 55. He was convicted on both counts by a jury sitting in the same district on April 19, 2010. *Id.* at 30. On June 29, 2010, he was sentenced to two consecutive sentences of life imprisonment without the benefit of parole, probation, or suspension of sentence.[3] Doc. 16, att. 29, pp. 37–40.

### B.  Direct Appeal

The petitioner appealed his convictions and sentences to the Louisiana Third Circuit Court of Appeal. He alleged that:

1.   The trial court erred in denying his motion in limine in part.
2.   His trial counsel was ineffective for failing to object to the court's lack of a ruling on his motion for a mistrial and to the testimony of two of the state's witnesses.
3.   The evidence at trial was insufficient to sustain his convictions.

Doc. 16, att. 1, pp. 30–46; Doc. 16, att. 2, pp. 1–15. The Third Circuit considered all claims and found them to be without merit. *Id.* Accordingly, on May 11, 2011, it affirmed the petitioner's convictions and amended his sentences relating to a condition raised in an error patent. Doc. 16, att. 2, p. 15.

The petitioner then sought a writ of review at the Louisiana Supreme Court, which denied same on March 30, 2012. *State ex rel. Kohn v. State*, 85 So.3d 111 (La. 2012) (mem.). He did not seek review in the United States Supreme Court. Doc. 1, p. 4.

---

[1] As of 2015 this offense, LA REV. STAT. 14:42, is now called "first degree rape." The elements of the crime have not changed. *See* SEX OFFENSES, 2015 La. Sess. Law Serv. Act 256 (S.B. 117) (WEST). This court will continue to use the term from the time of the petitioner's conviction.

[2] T.P. was the petitioner's stepdaughter and M.M. is her cousin. Doc. 16, att. 27, p. 42; Doc. 16, att. 16, p. 45.

[3] The petitioner filed a motion to reconsider sentence on the same day, which the trial court denied. Doc. 16, att. 19, p. 29; Doc. 16, att. 11, p. 31.

### C.  State Collateral Review

On November 23, 2011, the petitioner filed a Motion for Production of Transcripts with the 30th Judicial District.  Doc. 16, att. 4, pp. 42–44.  The motion was denied as a copy had already been provided. Doc. 16, att. 4, p. 45.  The Third Circuit declined to address this claim, stating that "there is nothing in the record . . . to show Relator raised the matter before the trial court" and dismissing it in accordance with Uniform Rules–Courts of Appeal, Rule 1.3. *Id.* at 14. The petitioner then sought review in the Louisiana Supreme Court, which denied same on November 22, 2013. *Id.* at 2–12; *State ex rel. Kohn v. State*, 126 So.3d 481 (La. 2013) (mem.).

The petitioner also filed an application for post-conviction relief in the 30th Judicial District on May 2, 2012, alleging ineffective assistance of counsel based on his trial attorney's failure to object to the empaneling of an allegedly unconstitutional petit jury and the verdict rendered thereby. Doc. 16, att. 9, p. 16. The 30th Judicial District reviewed this claim on the merits and denied the application. *Id.* at 4. The petitioner sought a writ of review at the Third Circuit. Doc. 16, att. 8, pp. 10–17. The Third Circuit ruled on May 13, 2013,[4] finding no error to the trial court's decision. Doc. 16, att. 4, p. 14. The petitioner then sought review at the Louisiana Supreme Court, which denied same on November 22, 2013. *State ex rel. Kohn*, 126 So.3d at 481.

---

[4] Review of the denial of petitioner's Motion for Production of Transcripts was incorporated into his application for supervisory or remedial writs on his application for post-conviction relief. *See* Doc. 16, att. 4, p. 14; Doc. 16, att. 8, pp. 15–16.

### D.  Habeas Petition

A petition for a writ of habeas corpus was filed with this court on January 2, 2014. The petitioner frames his arguments as follows, based on the assignments of error in his direct appeal and state collateral review:

1. Whether the trial court's denial in part of the motion in limine rendered a conviction that was contrary to federal law.
2. Whether the petitioner was denied his Sixth Amendment right to effective representation.
3. Whether there was sufficient evidence to sustain the convictions of aggravated rape.
4. Whether the counsel was ineffective for failure to object to verdict by an allegedly unconstitutional petit jury, and whether the 30th Judicial District erred in its denial of transcripts to the petitioner to properly brief this error.

Doc. 1, att. 2, p. 6.

## II.
## LEGAL STANDARDS ON HABEAS REVIEW

### A.  Timeliness

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n.1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The

limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Mayle v. Felix*, 545 U.S. 644, 644 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B.  *Procedural Default and Exhaustion of State Court Remedies*

Exhaustion and procedural default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Before considering the merits of the issues raised in this petition, this court evaluates the claims under the doctrines of procedural default and exhaustion of state court remedies.

### 1.  *Exhaustion of State Court Remedies*

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d

699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

### 2. *Procedural Default*

When a petitioner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to satisfy state procedural requirements results in forfeiture of a petitioner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter; rather, it is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which

he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

### C. General Principles

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456, 471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary]

result . . . ." *Bell v. Cone*, 543 U.S. 447, 452-53 (2005), quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (internal quotations omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 546 U.S. 333, 341 (2006).

### III.
#### ANALYSIS

As a preliminary matter this court reviews the petitioner's application for timeliness, failure to exhaust state court remedies, and procedural default. If the claim is procedurally viable, its merits are considered under the general standards set forth in Section II.C.

#### A. *Timeliness*

Here the petitioner conviction became final ninety days after the judgment of the Louisiana Supreme Court, when his time for seeking review by the United States Supreme Court expired. *See* Sup. Ct. R. 13. Therefore the one year limit for filing this petition began running on June 28, 2012. It was suspended first, however, by the filing of his application for post-conviction relief in the 30th Judicial District on May 2, 2012. Accordingly, no days were yet counted towards his one year limit. The clock began running with denial of his state collateral review on November 22,

2013, until the filing of the instant petition on January 2, 2014. At that point 41 days had elapsed. The instant petition is timely under § 2244(d).

### B. Exhaustion of State Court Remedies and Procedural Default

#### 1. Exhaustion of state court remedies

The respondent contends that the denial of transcripts portion of the petitioner's fourth claim was not fairly presented. He alleges that the petitioner failed to properly present this claim to the Third Circuit. The petitioner maintains that the Third Circuit's ruling was in error and that the claim was properly presented.

To have properly raised a claim to the state's highest court, a petitioner must have properly raised it in the intermediate court of appeal. *See Baldwin v. Reese*, 124 S.Ct. 1347, 1349 (2004). If a claim was properly presented, the court's failure to address it does not render it unexhausted. *Castille v. Peoples*, 109 S.Ct. 1056, 1059–60 (1989).

Here the Third Circuit claimed that the issue was not properly presented because the petitioner had not raised it to the trial court. However, the record indicates that this matter was raised before and considered on the merits by the trial court. The petitioner then renewed the motion in his application for post-conviction relief.[5] Doc. 16, att. 4, pp. 43–45; Doc. 16, att. 9, pp. 26–28. It therefore appears that this portion of the claim was properly presented to the Third Circuit. Accordingly, there is no basis for considering it unexhausted. A review of the record reveals that the substance of all other claims raised here was also presented to the required state courts on either direct appeal or collateral review. Therefore all claims have been exhausted.

---

[5] The petitioner also made a subsequent motion for production of documents to support his application for post-conviction relief. Doc. 16, att. 9, pp. 26–28. The 30th Judicial District stated in its ruling that the petitioner's "other motions . . . [including] For Productions of Documents, are all rendered moot by this ruling and are denied." Doc. 16, att. 9, p. 4.

### 2. *Procedural default*

Our review also indicates that, with the exception of the transcript denial issue, all claims were considered on the merits by the Third Circuit, as the last court to issue a judgment in the direct appeal and state collateral review. Federal courts do not generally consider whether the state court properly applied its default rule to the petitioner's facts. *E.g.*, *Barksdale v. Lane*, 957 F.2d 379, 383–84 (7th Cir. 1992) ("A federal court sitting in habeas corpus is required to respect a state court's finding of waiver or procedural default under state law.") However, an exception is occasionally recognized where it is obvious that the state court's reliance on the procedural rule was in error. *E.g.*, *Hodge v. Haeberlin*, 579 F.3d 627, 643 (6th Cir. 2009); *Forgy v. Norris*, 64 F.3d 399, 402 (8th Cir. 1995); *Kubat v. Thieret*, 867 F.2d 351, 366 n. 11 (7th Cir. 1989).

This court has found the alleged procedural violation for this issue to be unsupported by the record. It seems unjust to bar consideration of part of a constitutional claim based on the state court's error. Out of an abundance of caution, then, we lift the procedural bar on this issue.

### C. *Substantive Analysis*

Having determined that all claims can be heard by this court under § 2254, this court now considers each one by first ascertaining the appropriate standard of review and then applying that standard to the merits of the argument.

### 1. *Whether the trial court's denial in part of the motion in limine rendered a conviction that was contrary to federal law*.

The petitioner contends that the trial court erred in admitting prejudicial evidence against him. Such a claim is cognizable on federal habeas review only if constitutional error is alleged. *See Fuller v. Johnson*, 114 F.3d 491, 498 (5th Cir. 1997). This can be accomplished by showing a violation of due process which is done by demonstrating that the evidence was "material in the sense of a crucial, critical, highly significant factor." *Panzavecchia v. Wainwright*, 658 F.2d 337,

340 (5th Cir. 1981). Of course, there is no due process violation if the evidence was properly admitted. Therefore this court will only proceed to the prejudicial impact upon a finding of error. With no dispute as to the facts in the record, this claim is reviewed as a mixed question of law and fact. *Ornelas v. United States*, 116 S.Ct. 1657, 1662 (1996).

At trial the state sought to examine the petitioner's ex-girlfriend, Loretta Myers, about the fact that the petitioner had directed her to pictures of himself on websites entitled "I Like Them Young" and "I Ain't Right." *See* Doc. 16, att. 24, pp. 10–12. The petitioner filed a motion in limine to exclude testimony from this witness and the trial court ruled that Myers would be allowed to testify as to the petitioner's photographs but not the titles of the websites on which they were published. *Id.* at 11–12. After hearing new justifications at trial, the court ruled that Myers could testify as to the naked photo of the petitioner but not one where he was fully clothed or the titles of the websites. *Id.* at 16–17. Myers then testified that early in their relationship the petitioner had directed her to visit an unnamed website where he had posted a picture of an erect penis, and that he confirmed to her that the picture was of himself. *Id.* at 20–23.

Under the Louisiana Code of Evidence, which conforms with the Federal Rules in all pertinent matters discussed in this paragraph, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more . . . or less probable than it would be without that evidence." LA. CODE EVID. art. 401. Relevant evidence must be admitted unless prohibited on constitutional or other statutory grounds. *Id.* at art. 402. Prior acts of a person are generally not admissible to prove the character of a person in order to show that he acted in conformity therewith. *Id.* at art. 404(B)(1). However, they may still be admissible in order to show other things, including proof of "intent, preparation, [or] plan," so long

as notice is given to the defense. *Id.* Finally, the court may exclude relevant evidence if its probative value is "substantially outweighed" by the danger of unfair prejudice. *Id.* at art. 403.

The state asserted that the challenged testimony was relevant because it was probative of the fact that the petitioner used images posted on the internet as part of his plan to groom the victims. At the trial court's reconsideration of its ruling on the motion in limine, it stated:

> . . . it is apparent that the Defendant's means of operating, the way he went about seducing these young girls to be able to do the things that he did with them was by presenting an environment, if you will, that allowed them to be comfortable with his view of sexuality to show that other people engaged in these kinds of acts . . . .

Doc. 16, att. 24, p. 14. Both victims alleged in their interviews at the Child Advocacy Center that the petitioner had filmed them and taken pictures of them for a "contest." Doc. 16, att. 16, pp. 45–46. T.P. alleged that the petitioner had shown her pictures of other young girls and stated that he would also post the pictures and videos of the victims to the computer "so that [they] would win a prize." *Id.* at 46. They repeated these allegations at trial, with M.M. also stating that the petitioner had shown her child pornography on his computer to explain the contest. Doc. 16, att. 25, pp. 3–20 (testimony of M.M.), 45–50 (T.P.); Doc. 16, att. 26, pp. 1–21 (T.P.). Accordingly, there is no error in the trial court's finding. Evidence that the petitioner showed a nude photograph on the Internet to someone with whom he was in a romantic relationship was relevant to support his plan in the instant case.

The next question is whether the probative value of that evidence was substantially outweighed by the danger of unfair prejudice. The petitioner contends that the association with a nude photograph of himself on the internet could paint him as a "bad person with questionable morals." Doc. 1, att. 2, p. 10. He also claims that it was insufficiently probative, as it did not show any lustful predisposition towards children.

-12-

Although members of the jury might have found the photograph distasteful, it was not illegal and the petitioner's girlfriend raised no objection to receiving it. In light of the accusations the petitioner's internet activities are highly probative. There is no undue prejudice in evidence reflecting his sexual attraction to an adult female, with the exclusion of the portion reflecting an attraction to children. Accordingly, there is no error in the trial court's ruling. This claim therefore offers no basis for federal habeas relief.

### 2. Whether the petitioner was denied his Sixth Amendment right to effective representation.

The petitioner contends that his trial counsel was ineffective for his failure to urge the court to rule on his motion for a mistrial and to object to the testimony of Anna Theus and Mike Martin, in violation of his constitutional right to counsel. U.S. CONST. Amend. VI. With no dispute as to the parts of the record at issue here, this claim is reviewed as a mixed question of law and fact. *Ornelas*, 116 S.Ct. at 1662.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict.  *Id.* at 2064. This standard does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their reviews of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 1065). The resulting prejudice must also be so great that it creates a substantial likelihood of a

different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (internal quotations and alterations omitted). A petitioner must meet both of *Strickland*'s prongs in order to show a basis for federal habeas relief. *Id.*

### a.   Failure to urge ruling on motion for mistrial

During its cross-examination of the petitioner, the state sought to elicit testimony that he and his ex-wife had separated after she discovered that he had visited a website entitled "Daughters and Daddies." Doc. 16, att. 28, p. 45. The petitioner denied having heard of the website. *Id.* When the prosecutor pressed on the petitioner's counsel objected, stating that "the question itself is prejudicial enough to entitle me to a mistrial and we would ask for it right now." *Id.* at 46. The court responded by granting the objection, but made no mention of mistrial.[6]

Under Louisiana law mandatory grounds for a mistrial exist where the state makes reference within the hearing of the jury to certain topics.[7] LA. CODE CRIM. P. art. 770. When a party or court official makes a remark outside of the scope of Article 770 in the hearing of the jury that is nonetheless "irrelevant or immaterial and of such a nature that it might create prejudice . . . in the mind of the jury," the court shall issue an admonition to the jury to disregard the remark at the request of either party. *Id.* at art. 771. If the court determines that an admonition is insufficient to grant the defendant a fair trial it may, at the defendant's motion, declare a mistrial. *Id.*

---

[6] On review the Third Circuit found that no motion for a mistrial had been made. However, it erroneously quoted the petitioner's trial attorney as stating that "the question itself is prejudicial enough to entitle me to a mistrial and we **could** ask for it right now." Doc. 16, att. 2, p. 7 (emphasis supplied).

[7] These topics are:

    (1) race, religion, color or national origin, if the remark or comment is not relevant or material and might create prejudice against the defendant in the mind of the jury;

    (2) another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;

    (3) the failure of the defendant to testify in his own defense; or

    (4) the refusal of the judge to direct a verdict.

LA. CODE CRIM. P. art. 770.

Here the reference to the "Daughters and Daddies" site falls outside the scope of Article 770. *See* note 7. The transcript reflects that the petitioner's attorney made no request for an admonition. His mention of a motion for a mistrial and the court's failure to grant it thus fall within the scope of Article 771.

The respondent concedes that the petitioner's attorney did move for a mistrial, contrary to the Third Circuit's finding. We agree. An objection to the trial court's failure to rule was probably required to preserve the issue for appeal.[8] *See, e.g.*, *State v. Carter*, 974 So.2d 181, 186 (La. Ct. App. 2d Cir. 2008); *State v. Griffin*, 838 So.2d 34, 38 (La. Ct. App. 4th Cir. 2003). Failing to preserve a claim for appeal after otherwise raising it effectively rises to the level of deficient performance. *See, e.g.*, *Davis v. Sec. for Dept. of Corrections*, 341 F.3d 1310, 1313–16 (11th Cir. 2003).

However, *Strickland* is not satisfied unless the petitioner can also show prejudice from this deficiency. At trial the jury heard testimony from both victims, describing the sex acts they had been made to perform by the petitioner. Doc. 16, att. 25, pp. 3–20 (testimony of M.M.), 45–50 (T.P.); Doc. 16, att. 26, pp. 1–21 (T.P.). The victims' videotaped Child Advocacy Center interviews, the summaries of which show corroboration on the elements of the offense, were also admitted as evidence. Doc. 16, att. 22, p. 44; Doc. 16, att. 23, p. 33;[9] *see* Doc. 16, att. 16, pp. 45–46 (summaries). Additionally, there was already testimony from both victims that the petitioner showed them child pornography on his computer (see discussion under Claim 1, supra).

---

[8] *See* LA. CODE CRIM. P. art. 841(A) ("An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.") However, some allowance is made for "patent" errors, discoverable by inspection of pleadings and proceedings without inspection of the evidence. *State v. Spain*, 329 So.2d 178, 179 (La. 1976).

[9] The transcript states only the videotaped statements from T.P. were played. Doc. 16, att. 23, p. 33. However, the court's remark immediately before the tapes were played (. . .and I'm going to play them in the order in which these statements were conducted and obtained, that being [T.P.]'s statement on the 8th of August, [M.M.]'s statement on the 11th and then [T.P.]'s second statement on the 16th") and the prosecutor's comment shortly thereafter (". . . and as we just heard from [M.M.]"), made before M.M. appeared as a witness, make it apparent that the videotape of M.M. was also played at trial.

Given the discretionary nature of Article 771 and the weight of the evidence against him, the petitioner cannot demonstrate any likelihood that the trial court would have found the proceedings to be irretrievably prejudiced and granted a mistrial. He also cannot show that denial of the motion would have been reversed on appeal. Accordingly, the petitioner's claim fails the *Strickland* test and offers no basis for habeas relief.

### b.   Failure to object to testimony of Anna Theus and Mike Martin

Anna Theus ("Theus"), a former employee of the Rapides Parish Children's Advocacy Center, interviewed both victims there. Doc. 16, att. 23, p. 3. She described her questions and her instructions during the interview, and related a few of the victims' responses. *Id.* at 3–23. Mike Martin ("Martin"), a deputy with the Vernon Parish Sheriff's Office, testified that he had taken the first report after M.M. disclosed the sexual abuse to her mother ("A.C.") and A.C. brought her to the sheriff's office. Doc. 16, att. 24, pp. 33–34. He recalled A.C.'s demeanor and summarized the complaint. *Id.* at 33–36. On cross-examination petitioner's counsel asked Martin about M.M.'s specific allegations and he responded. *Id.* at 36–37. The state then elicited further testimony from Martin on this subject. *Id.* at 37–39.

Hearsay is "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." LA. CODE EVID. art. 801(C). There is no statement in Theus' testimony that fits this definition. All instances of prior statements, which were elicited for the first time on cross-examination by petitioner's counsel, seem to be offered to show the effect of different types of questions on the victims and the integrity of the interview process not the truth of the questions or the responses thereto. *See* Doc. 16, att. 23, pp. 3–26. Therefore they are not hearsay and there is no error in counsel's failure to object.

As for Martin's testimony, it was the defense that directed his testimony towards M.M.'s specific allegations. This appears to have been done in an effort to discredit M.M. by showing that she made prior inconsistent statements. Indeed, Martin's report limits M.M.'s allegations to the fact that the petitioner penetrated her with his finger and penetrated T.P. with his penis. Doc. 16, att. 24, pp. 36–39. It makes no mention of the claim, raised in her trial testimony and Children's Advocacy Center interview, that both victims were also made to perform oral sex on him. *Compare id. with* Doc. 16, att. 16, p. 45; Doc. 16, att. 25, pp. 4–5. Petitioner's counsel then drew attention to M.M.'s inconsistency in recalling the oral sex allegation in his closing argument, specifically recalling Martin's report. Doc. 16, att. 29, pp. 23–24.

On this basis it is clear that the defense deliberately declined to object to Martin's statements. As the Third Circuit noted, that petitioner's counsel raised the issue not to show that the allegations Martin recorded were true, but to preserve the inconsistencies in the record. *See* Doc. 16, att. 2, pp. 12–15.

*Strickland* review requires us to be "highly deferential of counsel's conduct and maintain a strong presumption that counsel's trial strategy fell within the wide range of reasonable professional assistance." *Pape v. Thaler*, 645 F.3d at 291. This circuit has consistently held that decisions regarding the examination of witnesses fall within the category of trial strategy. *Id.* at 291–92. The decision to allow any hearsay in the direct examination and to elicit further hearsay on that subject in the cross-examination was a deliberate tactic of the defense to point out inconsistencies in M.M.'s accusations. There is no basis here for second-guessing it. The defense, having opened the door to the specific allegations in the report, would not be entitled to object to

hearsay statements elicited by the state in its redirect.[10] Accordingly, there are no grounds for concluding that counsel's performance was deficient in this area. This claim therefore offers no basis for federal habeas relief.

### 3.  Whether there was sufficient evidence to sustain the convictions

The petitioner asserts that there was insufficient evidence at trial to sustain his conviction of aggravated rape for either victim. A sufficiency of evidence claim is a mixed question of law and fact. *Hernandez v. Warden, LA State Penitentiary*, 2014 WL 2169128, *9 (W.D. La. May 23, 2014).

A defendant's constitutional right to due process is violated when he is convicted of a crime without the state having met its burden of proof on every element of the offense. *Jackson v. Virginia*, 99 S.Ct. 2781, 2787 (1979) (citing *In re Winship*, 90 S.Ct. 1068, 1073 (1970)). Such claims are decided by determining whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000) (internal quotations omitted).

Here the petitioner was convicted of aggravated rape in violation of LA. REV. STAT. 14:42. Aggravated rape is defined in pertinent part as "where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim" under certain enumerated circumstances,

---

[10] In *State v. Seward*, the court found that the defendant opened door to permit admission of hearsay by asking police officer on cross-examination whether he had interviewed receptionist of building in which defendant claimed to be. 483 So.2d 155, 157 (La. Ct. App. 4th Cir. 1986) ("This is precisely why such a question is allowed. Once the defense opens the door in cross examination on a subject it becomes a proper subject for redirect. The defense may not approach a prohibited area, make misleading statements about what is presented there, and then close the door to clarification by the state.") The details elicited on redirect were also contained in other parts of M.M.'s Children's Advocacy Center interview, which had already been played. *Compare* Doc. 16, att. 24, pp. 37–39 *with* Doc. 16, att. 16, p. 45; *see* note 9, supra. Contrary to petitioner's claim that this amounted to prejudicial and improper bolstering, it is further evidence that the scope was proper to point out the overall consistency of M.M.'s testimony after the defense's attack. Therefore there is no deficiency in the failure to object to statements elicited on redirect.

including "[w]hen the victim is under the age of thirteen years." LA. REV. STAT. § 14:42(A). The ages of the victims are not in dispute. Instead, the petitioner contends that the evidence was insufficient due to the lack of physical evidence and alleged credibility issues in the testimony of the victims and other witnesses on the element of sexual intercourse.

The petitioner points to testimony that he enjoyed a good relationship with T.P. and his other daughter. *See* Doc. 16, att. 27, p. 37; Doc. 16, att. 28, p. 12. He raises the fact that claims of sexual abuse had been made in 2005 against T.P.'s other stepfather involving T.P. and three other children, and that these claims were found to be invalid. Doc. 16, att. 21, pp. 34–47. He also alleges that the mothers of M.M. and T.P. both bore grudges against him.[11] He points to testimony from T.P. in support of his claim that her mother induced her statements during the second Children's Advocacy Center interview.[12] Finally, he raises inconsistencies between the victims' testimonies and interviews, including discrepancies over when the abuse occurred[13] and if/how often they were made to perform oral sex on the petitioner. He also notes other issues, such as his disagreement

---

[11] In support the petitioner cites the following exchange from the trial transcript (testimony of Tommy Nash, stepfather of T.P.):

        Q: Now, did Susan Nash and her sister, Amanda, while you were there did they hold a grudge against Roger Kohn?

        A: When they first separated, yes sir . . .

        Mr. Kramar: Let me enter an objection . . .

        The Court: Wait just a minute, Mr. Nash.

        (Bench Conference)

        Mr. Kramar: My first objection is improper foundation as to how he would come by such knowledge in the event it was based on what he heard them say, again, we have a hearsay objection.

        Mr. Jones: I'll move on, Judge.

        The Court: Okay.

Doc. 16, att. 27, pp. 37–38.

[12] At trial T.P. stated that her mother promised her that the family would go out for pizza after her second Children's Advocacy Center interview if she (T.P.) would "answer all the questions [Theus] has and not be stubborn and just be a little brat," and that her mother likened the pizza to "a reward for being good and answering all the questions and not being rude and mean." Doc. 16, att. 26, p. 10.

[13] At trial M.M. stated that she believed that the incident in question – the night both girls were sexually abused – occurred around Christmas time. Doc. 16, att. 25, pp. 36–37. T.P. claimed that it happened over spring break or summer. *Id.* at 43.

with M.M.'s recollection that he had a Christmas tree, how many cameras he owned, and a discrepancy between the victims' recollection of what clothes they were made to wear.

In Louisiana, testimony of the victim alone is sufficient to establish the elements of a sexual offense. *State v. Schexnaider*, 852 So.2d 450, 457 (La. Ct. App. 3d Cir. 2003). Furthermore, "[t]he credibility of a witness, including the victim, is within the discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness." *Id.* (quoting *State v. Willis*, 915 So.2d 365, 378–79 (La. Ct. App. 3d Cir. 2005) (internal quotations and alterations omitted).

Under this discretionary standard, there is no reason to disturb the jury's findings of credibility in the testimony of M.M. and T.P. In light of the fact that allegations were also made by M.M. and maintained over the five-year period between the incident and the trial, little weight belongs to the fact that unsubstantiated claims were made against another member of T.P.'s family. Likewise, the reference to a grudge between the victims' mothers and petitioner was brief and vague. His allegation that T.P.'s interview responses were induced by her mother is only supported by testimony that T.P. was promised a reward for good behavior, not that her responses were in any way coached. Finally, even if the petitioner did enjoy a good relationship with T.P., no use of brute force was alleged. Rather, the state proved that he had engaged in a campaign to groom his victims and normalize sexual activities with them. There is no basis for determining that a rational trier of fact must have been swayed by this testimony in the petitioner's favor.

The discrepancy as to time does not appear remarkable to us, given that T.P. was allegedly abused on numerous other occasions by the petitioner and may have had difficulty remembering the timing of incidents. She was also consistent in recalling that the incident occurred while she was out of school and M.M. was visiting from out of town. *See* Doc. 16, att. 25, p. 43. As to the consistency between incidents, both victims recalled at least one incident of oral sex in the bathtub

during their trial testimony and Children's Advocacy Center interviews. The other discrepancies do not seem remarkable to us in light of the victims' agreement on what the petitioner told them, the details of other acts he videotaped, and the passage of time between the incident and trial. Accordingly, there is sufficient evidence in the victims' testimony to establish the elements of the offense and no grounds for overturning the jury's findings of the same. This claim therefore offers no basis for federal habeas relief.

> **4.   *Whether the counsel was ineffective for failure to object to verdict by an allegedly unconstitutional petit jury, and whether the 30th Judicial District erred in its denial of transcripts to the petitioner to properly brief this error.***

Lastly the petitioner contends that his conviction was based on a verdict of 9–2, reflecting an unconstitutionally empaneled petit jury. He also maintains that he was denied a copy of the record to adequately brief this claim. Because there is a dispute as to the facts, the state court opinions are reviewed for clear error.[14]

The standard for reviewing claims of ineffective assistance of counsel is provided under Claim 2, supra. Here, however, the respondent contends that there is no merit to the petitioner's underlying claim that the verdict was rendered by a petit jury. The minutes state that "the jury was polled and a vote of 9 "yeas" and 2 "nays" was recorded as to each count." Doc. 16, att. 11, p. 30. Yet the transcript of the jury polling shows that there were twelve members, who rendered a verdict of 10 "yeas" and 2 "nays." *See* Doc. 16, att. 10, pp. 7–9. When there is a discrepancy between the transcript and the minutes, the transcript governs. *Holderfield v. Jones*, 903 F.Supp. 1011, 1015 (E.D. La. 1995) (citing *State v. Landry*, 583 So.2d 911, 912 n. 2 (La. Ct. App. 1st Cir. 1991)). Therefore there is no merit to this portion of the petitioner's claim.

---

[14] In this case 30th Judicial District was the last to rule on denial of transcripts and the Third Circuit on the petit jury issue.

As a matter of equal protection, the state is required to furnish an indigent defendant with a transcript of prior proceedings when needed for an effective defense or appeal. *Britt v. North Carolina*, 92 S.Ct. 431, 433 (1971). It is assumed that these transcripts have value to the defendant; he is not required to show actual prejudice when he challenges the state over a denial. *Tague v. Puckett*, 874 F.2d 1013, 1014.

The polling of the jury is included in a supplemental portion of the record.[15] The petitioner references the supplemental record transcript, alleging that it still shows an unconstitutional number of jurors, in his brief to the 30th Judicial District on his application for post-conviction relief and in his brief to this court. *See* Doc. 1, att. 5, p. 16 ("the supplemental record transcript shows the jury was polled and was 11-2 as to both counts"); *see also* Doc. 1, att. 2, pp. 23–24 (same). This portion of the record was also included in the transcript supplied to the state. *See* Doc. 16, att. 10, pp. 1–12.

Meanwhile, the 30th Judicial District denied the petitioner's request for transcripts in the post-conviction relief stage on the grounds that they had already been provided. Doc. 16, att. 4, p. 45. "[A] state court's factual findings are presumed correct unless the applicant rebuts that presumption by clear and convincing evidence." *Washington v. Thaler*, 714 F.3d 352, 354 (5th Cir. 2013). The petitioner has produced no evidence, beyond an assertion which he contradicts with his own references, that he was denied any portion of the record. Therefore there is no merit to his assertion and neither allegation raised under this claim entitles the petitioner to federal habeas relief.

---

[15] It was filed with the Vernon Parish Clerk of Court's office on September 17, 2010, one day after an order by the Third Circuit to transcribe that portion of the trial and certain bench conferences in order to have a full record for the petitioner's direct appeal. Doc. 16, att. 10, pp. 4, 11–12. The affidavits of the 30th Judicial District clerk of court and court reporter indicate compliance with this order and that the transcripts were filed with the 30th Judicial District. *Id.*

**IV.**

**CONCLUSION**

For the reasons stated above, the undersigned concludes that the petitioner is not entitled to federal habeas relief.

Accordingly, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir.  1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE this 14th day of January, 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE